Filed 6/6/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NORMAN HALL,<br><br>    Defendant and Appellant. | A145088<br><br>(Alameda County<br>Super. Ct. No. 172077) |

Pursuant to a plea agreement, Norman Hall pleaded no contest to a felony charge of grand theft from a person (Pen. Code, § 487, subd. (c)),[1] admitted two prior felony convictions, and was sentenced to a five-year prison term. After Hall served a portion of his sentence, the Safe Neighborhoods and Schools Act (Proposition 47) reduced certain drug and theft offenses to misdemeanors and created a process for resentencing persons serving felony sentences for those offenses (§ 1170.18). Hall filed a petition to reduce his conviction to a misdemeanor, which was denied on the basis that his resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.18, subds. (b)–(c).) We find the trial court did not abuse its discretion and affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

On May 22, 2013, around 6:30 p.m., Danelle Sinclair was walking on 23rd Avenue in Oakland when she noticed a man later identified as Hall following her. Hall repeatedly said, "hey, baby" and then "came up in front of [Sinclair]" and asked for her

---

[1] Undesignated statutory references are to the Penal Code.

[2] Because Hall entered a plea bargain, the following facts are taken from the preliminary hearing transcript and a December 16, 2013 probation report.

purse. When Sinclair did not respond, Hall pushed her into a parked car and said, "Let go of your purse, bitch." Sinclair felt and saw a knife on her abdomen. Hall said, "he would stab [her] if [she] didn't give him [her] purse . . . ." Eventually, Hall "ripped" the purse from her shoulder and ran away. A police officer found Hall running down the street with Sinclair's purse.

Hall was charged by information with second degree robbery (§ 211) with an enhancement for personal use of a deadly weapon (§ 12022, subd. (b)(1)). It was further alleged Hall had suffered 10 prior felony convictions and served five prior prison terms. Two of the prior convictions were serious and violent felonies (§§ 667, subd. (a)(1), 667.5, subd. (c), 1192.7, subd. (c)) and "strikes" for purposes of the three strikes law (§§ 1170.12, subd. (c)(2), 667, subd. (e)(2)).

In exchange for dismissal of the robbery count and all other special allegations, Hall pleaded no contest to a lesser included offense, grand theft from a person (§ 487, subd. (c)), and admitted two prior prison term enhancements (convictions for a 2003 grand theft and a 2011 reckless driving while evading an officer pursuant to Veh. Code, § 2800.2, subd. (a)). It was agreed that Hall would be sentenced to five years in prison (an upper three-year term for the instant grand theft charge, plus one year for each enhancement). The trial court found a factual basis for Hall's plea and approved the plea bargain. On December 16, 2013, Hall was sentenced to a five-year term in prison and credited with 418 days for time served.

In 2014, California voters passed Proposition 47, which was intended to "ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K–12 schools, victim services, and mental health and drug treatment." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 2, p. 70.) To that end, Proposition 47 reduced most possessory drug offenses and thefts of property valued at less than $950 to straight misdemeanors and created a process for persons currently serving felony sentences for those offenses to petition for resentencing (§ 1170.18). After enactment of Proposition 47, Hall filed a petition to reduce his felony

2

conviction to a misdemeanor.[3]  In opposing the petition, the People argued that Hall's resentencing would violate the plea bargain and present an unreasonable risk of danger to public safety (§ 1170.18, subds. (b)–(c)).

At the hearing on Hall's petition, the prosecutor referred to Hall's lengthy criminal record, as well as records from the California Department of Corrections and Rehabilitation (CDCR).  In particular, the prosecutor highlighted the violence involved in the instant offense, "as well as the fact that he was on probation for a [robbery] where he assaulted a homeless woman and threatened to kill her if she didn't give over her property . . . ."  The CDCR records showed Hall had no disciplinary issues in prison but apparently referred to a 1996 arrest for sexual assault, as well as "another statement about an incident that . . . was sexual in nature."[4]  Although Hall's counsel maintained arrest records should not be considered, he raised no other objection to the CDCR records and the trial court indicated they would become "part of the record."  At the hearing's conclusion, the trial court denied Hall's petition on the ground he presented an unreasonable risk of danger to public safety.  Hall filed a timely notice of appeal.

## II.    DISCUSSION

On appeal, Hall contends substantial evidence does not support the trial court's finding that resentencing would pose an unreasonable risk of danger to public safety. The People disagree and also suggest, for the first time, Hall is ineligible for resentencing (§§ 490.2, subd. (a), 1170.18, subds. (a), (i)).  In the alternative, the People maintain that, if Hall is entitled to relief under Proposition 47, the parties should be returned to their positions before the plea bargain.  We conclude the trial court did not abuse its discretion

---

[3] The voters enacted Proposition 47 on November 4, 2014, and it became effective the following day.  (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089; Cal. Const., art. II, § 10, subd. (a).)  Briefing and orders in the court below would indicate that Hall filed a resentencing petition shortly after the initiative's enactment.  However, the only petition appearing in the clerk's transcript is a mandatory local form entitled "Petition for Resentencing – Response and Order," which includes the trial court's order and was filed on April 30, 2015.

[4] The CDCR records are not in the record before us.

3

in determining resentencing Hall would pose an unreasonable risk of danger to public safety.

"Proposition 47 makes certain drug- and theft-related offenses misdemeanors, unless the offenses were committed by certain ineligible defendants. These offenses had previously been designated as either felonies or wobblers (crimes that can be punished as either felonies or misdemeanors)." (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108.) Proposition 47 added section 490.2, which provides: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in [section 667, subd. (e)(2)(C)(iv)] or for an offense requiring registration pursuant to subdivision (c) of Section 290." (§ 490.2, subd. (a).) Proposition 47 also enacted section 1170.18, which created a resentencing procedure for persons serving felony sentences for crimes that would have been misdemeanors after the initiative.

"Under section 1170.18, a person 'currently serving' a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition for a recall of that sentence and request resentencing in accordance with the statutes that were added or amended by Proposition 47. (§ 1170.18, subd. (a).)[5] A person who satisfies the criteria in section 1170.18 shall have his or her sentence recalled and be 'resentenced to a

_____

5 Section 1170.18, subdivision (a) states: "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act."

misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.18, subd. (b).)" (*People v. Rivera, supra,* 233 Cal.App.4th at p. 1092.) "Section 1170.18 thus provides a two-step mechanism . . . . First, the trial court must determine if the petitioner is eligible for resentencing under section 1170.18 based on a preponderance of the evidence. [Citations.] If the court finds the petitioner eligible, the trial court must determine the factual issue of whether the petitioner presents an unreasonable risk of danger to public safety if resentenced." (*People v. Bush* (2016) 245 Cal.App.4th 992, 1001.)

"Subdivision (c) of section 1170.18 defines the term 'unreasonable risk of danger to public safety,' and subdivision (b) of the statute lists factors the court must consider in determining 'whether a new sentence would result in an unreasonable risk of danger to public safety.' (§ 1170.18, subds. (b), (c).)" (*People v. Rivera, supra,* 233 Cal.App.4th at p. 1092.) " '[U]nreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of [section 667, subdivision (e)(2)(C)(iv)]."[6] (§ 1170.18, subd. (c).) "The critical inquiry . . . is not

---

[6] Section 667, subdivision (e)(2)(C)(iv) provides a list of felony offenses commonly known as "super strikes." (See *People v. Rivera, supra,* 233 Cal.App.4th at p. 1092.) These offenses include "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code. [¶] (II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289. [¶] (III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288. [¶] (IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive. [¶] (V) Solicitation to commit murder as defined in Section 653f. [¶] (VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245. [¶] (VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418. [¶] (VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death." (§ 667, subd. (e)(2)(C)(iv).)

5

whether the risk is quantifiable, but rather, whether the risk would be 'unreasonable.' " (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769.) "In exercising *its discretion*, the court may consider all of the following: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated. [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b), italics added.)

We first address the People's claim that Hall failed to establish his eligibility for resentencing. "The only persons categorically ineligible are those with prior convictions for an enumerated handful of serious crimes, such as murder, rape, or child molestation. (See §§ 490.2, subd. (a), 667, subd. (e)(2)(C)(iv) [listing the disqualifying prior violent convictions].)" (*T.W. v. Superior Court* (2015) 236 Cal.App.4th 646, 652; accord, § 1170.18, subd. (i).)[7] Hall has no prior convictions that make him categorically ineligible for resentencing. However, as the petitioner, Hall did have "[an] initial burden of establishing eligibility for resentencing under section 1170.18(a): i.e., whether the petitioner is currently serving a felony sentence for a crime that would have been a misdemeanor had Proposition 47 been in effect at the time the crime was committed. If the crime under consideration is a theft offense under sections 459.5, 473, 476a, 490.2, or 496, the petitioner will have the additional burden of proving the value of the property did not exceed $950.' " (*People v. Sherow* (2015) 239 Cal.App.4th 875, 879; accord, *People v. Rivas-Colon* (2015) 241 Cal.App.4th 444, 449.) The People assert Hall's petition was properly denied because he made no showing that the value of property taken from Sinclair was less than $950. (§ 490.2, subd. (a).)

---

[7] "The provisions of [section 1170.18] shall not apply to persons who have one or more prior convictions for an offense specified in [section 667, subdivision (e)(2)(C)(iv)] or for an offense requiring registration pursuant to subdivision (c) of Section 290." (§ 1170.18, subd. (i).)

"The trial court's decision on a section 1170.18 petition is inherently factual, requiring the trial court to determine whether the defendant meets the statutory criteria for relief. . . . [Whether] the value of the property defendant stole disqualifies him from resentencing under [section 1170.18] . . . is a factual finding that must be made by the trial court in the first instance." (*People v. Contreras* (2015) 237 Cal.App.4th 868, 892.) Evidence to support such a finding may come from within or outside the record of conviction, or from undisputed facts acknowledged by the parties. In some cases, the record of a petitioner's conviction may suffice to establish a prima facie case for resentencing. But in others it may not, particularly where there was no reason for either party to fix the value of the property stolen when the plea was taken. (*People v. Perkins* (2016) 244 Cal.App.4th 129, 140, fn. 5.)

Here, the accusatory pleading, preliminary hearing transcript, plea agreement, and plea hearing transcript are silent on the value of the property taken from Sinclair. Section 487, subdivision (c), does not include a threshold value required for a felony conviction. Thus, Hall's plea does not establish that the value of the stolen property. Hall did not submit any additional evidence on the issue with his April 30, 2015 petition for resentencing. However, because it is unclear whether Hall may have submitted such evidence with a petition that may have been filed in November 2014, and the People failed to press the issue below, we decline to further address this basis for affirming the trial court's order.

Turning to the second stage of the resentencing analysis, we observe section 1170.18, subdivision (b), repeatedly refers to the trial court's discretion to determine that resentencing a petitioner would pose an unreasonable risk of danger to public safety. Accordingly, we agree with the People that we review the trial court's denial of Hall's petition for abuse of discretion. (§ 1170.18, subds. (a)–(c); see *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' "

7

(*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125, italics omitted.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) "An abuse of discretion is shown when the trial court applies the wrong legal standard." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

"When interpreting a voter initiative such as Proposition 47, we apply the same principles that govern statutory construction. [Citations.] Under well-founded principles of statutory construction, 'in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them "their usual and ordinary meaning." [Citation.] "The statute's plain meaning controls the court's interpretation unless its words are ambiguous." [Citations.] "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.]' [Citation.] [¶] . . . A single word or sentence in a statute is not determinative; the words must be construed in context, harmonizing to the extent possible the provisions relating to the same subject matter. [Citation.] We do not construe statutes in isolation. Rather, we read every statute taking into consideration the entire scheme of law of which it is part. In doing so, the whole statutory scheme may be harmonized and retain effectiveness." (*People v. Bush, supra,* 245 Cal.App.4th at p. 1003.)

The trial court did not abuse its discretion. In making its finding that resentencing Hall would result in an unreasonable risk to public safety, the court clearly stated an awareness of its discretion. It further explained: "There's two things that really strike the Court. The first has to do with what would appear to be . . . a continual and consistent escalation in the types of crimes that [Hall] has committed throughout his criminal history and the seriousness of those crimes. [¶] . . . [¶] What's not lost on the Court . . . is that in each of [Hall's most recent offenses he] indicates a willingness to not only use force but to use deadly force. In the 2012 case, [Hall] is alleged to have told the victim, quote, 'Stop following me or I'm going to kill you.' In the most recent case, [Hall] did use a knife and did indicate to [Sinclair] that . . . if she didn't let go of the purse, he

would stab her.  So in two instances, I've got what I think can be fairly recognized as circumstantial evidence of an individual who has the present capacity to, and presumably the willingness to use deadly force. [¶] And if I look at those factors and if I look at how contemporaneous those incidents are in time to the request being made today, . . . [¶] . . . I think . . . *a reasonable inference can be drawn that* [*Hall*] *is in fact ready, willing, and able to commit one of those super strikes* if . . . one of his victims doesn't comply with his unreasonable and unlawful demands."  (Italics added.)

Hall insists that the trial court improperly "substituted a finding that [he] had committed 'generally dangerous' crimes for a finding that he was likely to commit a specified highly dangerous crime."  Contrary to Hall's assertion, the court did not indicate the unreasonable risk of danger to public safety exception applied merely because Hall was "generally dangerous" or a violent felon with strike priors.  Rather, the court clearly considered whether Hall presented an unreasonable risk of committing a "super strike" if resentenced.  Thus, the trial court applied the appropriate standard for determining whether Hall posed an unreasonable risk of danger to public safety. (§§ 1170.18, subds.(b)–(c), 667, subd. (e)(2)(C)(iv); *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1309.)

The trial court also expressly considered each enumerated factor in exercising its discretion.  (§ 1170.18, subd. (b)(1)–(3).)  The court's "dangerousness" finding is supported by those same factors—Hall's criminal record and his record of rehabilitation.[8] Hall apparently has no record of prison misconduct, but for nearly two decades he has regularly engaged in serious criminal behavior that has become increasingly violent. Hall's criminal history began in 1998 with misdemeanor receipt of stolen property, for which he was sentenced to three years on probation.  Approximately two years later, in 2001, he drove recklessly while evading a peace officer and committed two counts of

---

[8] The trial court did not act arbitrarily and capriciously by considering Hall's arrest records, as Hall suggests.  In fact, the record does not support Hall's claim that such records factored into the court's exercise of discretion in any way.

9

unlawful possession of a controlled substance. Hall was sentenced to prison for 16 months. Upon release in 2002, he committed a robbery (his first strike), as well as two felony counts of grand theft from a person and was sentenced to six years in prison. In 2009, he was convicted of possession for sale and received three years on probation. While still on probation in 2010, he committed another felony count of reckless driving while evading a police officer and was sentenced to 16 months in prison. In 2012, he was convicted of misdemeanor illegal weapons possession (former § 12020) and second degree robbery (his second strike). He was sentenced to five years on probation, with one day in jail, on the latter conviction. Hall committed his current offense approximately six months later.

Hall has been provided numerous opportunities to reform, but he has made no serious efforts. In fact, his most recent offenses are the most concerning, and the instant offense was committed while he was on probation. In the 2012 robbery conviction, Hall threatened to kill his victim. In his most recent offense, Hall pressed a knife against Sinclair's stomach and threatened to stab her if she did not give him her purse. When interviewed by the probation officer regarding his most recent offense, Hall denied responsibility.

The trial court could reasonably infer from Hall's recent criminal behavior and repeated failure to rehabilitate that he presents an elevated—and escalating—risk of not only threatening violence, but also using deadly force. (See § 667, subd. (e)(2)(C)(iv)(IV).) We are not persuaded by Hall's argument that such an inference is speculative because "the commission of a robbery with use of a knife is not one of the crimes listed in [section 667, subd. (e)(2)(C)(iv)]" and "in the one instance in which [Hall] was alleged to have used a knife . . . , he refrained from using it to inflict injury." Hall asserts his history shows that "[a]t the most . . . he *threatened* to commit a homicide *but did not do so*, even when the victims failed to heed his warnings." Hall essentially suggests the trial court may only exercise its discretion to find an unreasonable risk to public safety when considering an offender who has previously committed a "super strike" offense. Such offenders are already categorically eliminated from eligibility for

10

resentencing.  (§ 1170.18, subd. (i).)  We cannot limit the trial court's discretion to offenders who have already committed a super strike offense without construing subdivisions (b) and (c) of section 1170.18 as meaningless surplusage.  The general rule is that "statutes are to be construed to give meaningful effect to all of their provisions, and to avoid rendering any language superfluous."  (*Planned Parenthood Affiliates v. Van de Kamp* (1986) 181 Cal.App.3d 245, 270.)

Hall has not shown the trial court abused its discretion when it found he would pose an unreasonable risk of danger to public safety if resentenced.  Accordingly, we need not reach the question of whether relief under Proposition 47 would entitle the People to withdraw from the plea bargain.[9]

### III.    DISPOSITION

The order denying Hall's petition for resentencing is affirmed.

---

[9] A related question is currently pending before our Supreme Court in *Harris v. Superior Court* (2015) 242 Cal.App.4th 244, review granted February 24, 2016, S231489 and *People v. Perry* (2016) 244 Cal.App.4th 1251, review granted April 27, 2016, S233287.

_____

BRUINIERS, J.


WE CONCUR:


_____

SIMONS, Acting P. J.


_____

NEEDHAM, J.

12

A145088

Superior Court of Alameda County, No. 172077, Paul A. Delucchi, Judge.

Richard Such, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Rene A. Chacon and Nanette Winaker, Deputy Attorneys General, for Plaintiff and Respondent.