Filed 12/29/25  P. v. Brimage CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT BRIMAGE,<br><br>    Defendant and Appellant. | F088995<br><br>(Super. Ct. No. BF171609A)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  David Wolf, Judge.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Kari Ricci Mueller, and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 2018, defendant Robert Brimage pleaded guilty to two counts of second degree robbery (Pen. Code,[1] § 212.5, subd. (c), counts 1 & 2) and admitted a strike prior and a prior serious felony conviction allegation (§§ 667, subds. (a) & (c)–(j), 1170.12, subds. (a)–(e). Pursuant to the negotiated plea, the trial court sentenced defendant to a stipulated term of 17 years—10 years on count 1 (the upper term, doubled), two years on count 2 (one-third the middle term, doubled), and five years for the prior serious felony (§ 667, subd. (a)).

In June 2024, the Department of Corrections and Rehabilitation (CDCR) sent the trial court a letter providing it with authority to resentence defendant pursuant to section 1172.1 in light of the court's newfound discretion to dismiss prior serious felony enhancements (§ 667, subd. (a)). The court appointed defendant counsel and set the matter for a hearing. After the hearing, the court stated it was "not going to exercise [its] discretion," it was "leaving the sentence in play as originally sentenced," and it "denied" the "motion."

Defendant now appeals from the trial court's order asserting the court erred in denying recall and resentencing without finding that he "currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18," as required to overcome the presumption in favor of recall and resentencing provided for in section 1172.1, subdivision (b)(2). (Italics omitted.) He asserts the court should have resentenced him under current law and imposed the middle term. The People assert the court recalled and resentenced defendant and it did not abuse its discretion in resentencing him to the same term.

We conclude remand for further proceedings is appropriate.

---

[1] All further undesignated statutory references are to the Penal Code.

## BACKGROUND

In 2018, a complaint was filed alleging defendant committed five counts of robbery by means of force or fear (§ 212.5, subd. (c), counts 1 (of Hayana Smoke Shop), 2 (of Subway), 3 (of Chevron), 4 (of Smoke Plus), & 5 (of Subway)) in January 2018. As to each count, it was alleged defendant personally used a firearm during the commission of the offense (§ 12022.53, subd. (b)). It was also alleged as to each count that defendant had previously been convicted of a strike prior (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)) and a prior serious felony (§ 667, subd. (a)) and that he had suffered four prior prison terms within the meaning of former section 667.5, subdivision (b). The complaint further alleged that defendant unlawfully possessed a firearm (§ 29800, subd. (a)(1), count 6) with the same prior conviction allegations.

On July 25, 2018, defendant pleaded no contest to counts 1 and 2 and admitted having a prior conviction that qualified as a strike prior and a prior serious felony enhancement (§ 667, subd. (a)) alleged as to count 1 in exchange for a sentence of 17 years in state prison. The remaining counts and allegations were dismissed as part of the plea.[2] Pursuant to the plea agreement, the trial court sentenced defendant to 10 years on count 1 (the upper term of five years, doubled), plus 5 years for the prior serious felony enhancement (§ 667, subd. (a)) and two years (one-third the middle term) on count 2 to be served consecutive to defendant's sentence on count 1. Defendant was

---

[2]    At the same hearing, defendant also entered a plea in case No. BF171609B which was consolidated with the current case (No. BF171609A). In that case, defendant pleaded no contest to committing second degree robbery (§ 212.5, subd. (c)) on January 19, 2018, admitted a prior strike, and that he had served a term in prison in exchange for a sentence of seven years on that case—six years (the middle term) enhanced by one year pursuant to section 667.5, former subdivision (b). He also entered a plea of no contest to being a felon in possession of a firearm with a prior strike in case No. BF172150A for a sentence of 16 months (one-third the middle term). Accordingly, he was ordered to serve an additional eight years four months consecutive to his sentence in this case.

ordered to pay a restitution fine of $300 pursuant to section 1202.4, subd. (b), a court security fee of $80 pursuant to section 1465.8, subdivision (a)(1), and an assessment of $60 pursuant to Government Code section 70373.

On June 20, 2024, a letter from the Office of the Secretary of the CDCR was filed with the superior court "to provide the court with the authority to resentence [defendant] pursuant to … Section 1172.1, Subdivision (a)(1), based upon a change in sentencing law." The Secretary noted that "[a]s of June 27, 2018, a court's power to resentence under this section expressly extends to judgments entered after a plea agreement, if in the interest of justice." The letter further detailed, "The enhancement pursuant to [section] 667[, subdivision] (a)(1), provides for the imposition of a consecutive five-year enhancement on any person convicted of a serious felony for each previous conviction of a serious felony (or other qualifying conviction) brought and tried separately. Courts were previously barred from striking prior serious felony convictions for purposes of enhancement under this section. However, effective January 1, 2019, courts are now authorized to exercise their discretion to strike prior serious felony convictions for purposes of enhancement under this section, or to strike the punishment for the enhancement under this section, pursuant to [section] 1385." The Secretary recommended that defendant's sentence be recalled and that he be resentenced in accordance with section 1172.1, subdivision (a)(1) in light of the court's newfound authority and after "personally reviewing [defendant's] commitment offense and in-prison conduct." The Secretary enclosed a cumulative case summary that detailed the current commitment offense, defendant's prior juvenile and criminal history, his parole history, and his disciplinary record since the date of incarceration on this term which noted he had received one counseling chrono on January 22, 2019, for failure to meet work expectations. The report also detailed defendant's self-help activities, namely his milestone completions, and his medical and mental health. The court appointed defendant counsel on the CDCR referral.

On June 27, 2024, defendant submitted a form request for recall of sentence and resentencing pursuant to Assembly Bill 600 (2023–2024 Reg. Sess.) and section 1172.1. Under a section titled "Statement of Eligibility," defendant asserted he was "eligible for consideration of a new sentence under AB 600 and Penal Code § 1172.1 because the following law(s) applied at the time of [his] sentencing has changed" and he checked boxes next to section 1385 (amended in 2022 by Senate Bill No. 81 (2021–2022 Reg. Sess.)), section 667, subdivision (a)(1) (amended in 2019 by Senate Bill No. 1393 (2017–2018 Reg. Sess.), sections 1170 and 1170.1 (amended in 2022 by Senate Bill No. 567 (2021–2022 Reg. Sess.)).  Under a section titled, "Reasons to Grant Relief," defendant urged the court to modify his sentence based on "new statues [*sic*] regarding enhancements," asserting it was within the court's power to consider.  He stated that he has "been an exemplary inmate" since his incarceration," "never been written up," "participated in and completed a variety of rehabilitative classes," and "rebuilt and strengthen [*sic*] relations with [his] family which solidifies [his] support group upon release."  Defendant attached to his request evidence of rehabilitative classes he has taken while incarcerated, a letter of acceptance to a program upon his release from California Rehabilitation Center, and a letter of support from his brother indicating that defendant could live with him upon release.

On July 1, 2024, the trial court issued an order denying the "Motion/petition for resentencing in regards to case number listed above received on 6/27/2024," stating "[d]efendant is not eligible for relief requested in the Motion/Petition."  The order was signed by the Judge of the Superior Court, Honorable Michael G. Bush.  At a July 26, 2024 hearing, the presiding judge, Honorable David Wolf, noted another judge had denied the motion defendant had filed.

At a subsequent September 20, 2024 hearing, the trial court noted "Judge Bush back on July 1st did deny your motion.  However, that was a motion filed by you, and at that time … the statute didn't include pro pers.  This time it's been filed by [the] CDCR,

5.

and so I am not going to summarily deny. I do think we need to set this for a formal hearing." The prosecutor asserted, "I am not sure it would make a difference. But as I read [section] 1172.1, I understand that the Court may recall a sentence anytime upon recommendation of the Board of Parole hearing for CDC. And so I don't necessarily disagree with the Court on the Court's ability to. However, I do think its discretion [*sic*], so I am asking the Court to deny it." The court ordered the parties to be ready on November 15th "over the District Attorney's objection."

On November 12, 2024, defendant filed a sentencing statement pursuant to section 1172.1, subdivision (a)(1), incorporating by reference the letter submitted by the CDCR. He asserted he was "entitled to a new sentencing hearing" and he requested "that the court dismiss the [section] 667[, subdivision (a)] prior." Defendant urged the trial court to consider his rehabilitation efforts and to consider the mitigating circumstances provided for in section 1385, subdivision (c)(2) in conducting resentencing. He asserted his section 667, subdivision (a) five-year enhancement "should be dismissed because it is more than 5 years old, as well as the postconviction factors that [defendant] has accomplished." He also noted he has familial support and has "availed himself of all the opportunities available to him during his period of incarceration, and is rehabilitated." He attached to his sentencing statement his handwritten statement discussing his rehabilitative efforts, including that he had earned his associate's degree, and his postrelease plans to live with his brother in Arkansas. He also attached a laudatory chrono, certificates of completion of programs while incarcerated, and evidence of his educational pursuits while incarcerated. He subsequently filed a "Supplement" to his sentencing statement on November 18, 2024, asking the court to strike his strike prior, which, he asserted, was 27 years old at the time of his conviction, and to impose the middle term instead of the upper term that was originally imposed because no aggravating circumstances had been pled and proven.

The trial court reset the hearing on the petition for resentencing to November 22, 2024. At the outset of the hearing on November 22, 2024, the court noted the hearing was on for "Section 1172.1[, subdivision] (a)(1) potential resentencing." The court noted it "read and considered the CDCR document," defendant's sentencing statement and the related supplement, and a letter from defendant's brother.

The defense then argued the CDCR recommended the five-year section 667, subdivision (a) enhancement be stricken and that the court is to "give that recommendation great weight." Defense counsel "join[ed] in that request" and asserted defendant is "now entitled to the full resentencing" during which the court should "consider striking the prior strike conviction or granting a *Romero*[3] as to that one" and impose the middle as opposed to the upper term. She asked the court to consider defendant's rehabilitative efforts and his postrelease plan in considering the resentencing requested.

The trial court noted on the record some of the documents that were submitted by the defense, including a certificate of appreciation regarding defendant's daily hard work, his "significant progress" with regard to educational coursework, a certificate of completion with regard to a substance use disorder treatment in 2022, another certificate for preparing for success after prison in 2021, a laudatory chrono, and defendant's handwritten letter. Prompted by the court's question, defendant stated on the record that he would be done with "Ethic Studies" that December.

Upon request by the People, the trial court admitted a certified copy of defendant's rap sheet as an exhibit at the hearing. The court then discussed defendant's prior convictions, prior performance on parole, and his rehabilitative efforts observing:

> "[H]e's got the 496 in '85 and a theft in '86. '87, possession of a switch blade. I'm just doing the adult. Loitering and a 148 9 [*sic*], false information to a peace officer. 1988, a grand theft. 1989, Penal Code

---

**3**    *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

7.

Section 4530(c) failing to return to confinement. 1991, a robbery 212.5(b) second [de]gree. He's got a 1993 Health and Safety Code Section 11550 and another 148.9 false information and a petty theft. '95, he's got under the influence. '99, obtaining telephone services by fraud. '98, possession of controlled substance. I'll give that little weight because we all know those are misdemeanors nowadays. And in 1999, he's got a 273(a) child cruelty possible injury or death with a prior felony conviction. I'm not sure that is also reflected in the rap sheet…. That is fairly significant…. [F]or the first robbery in 1991 … he could go to prison for 3 years…. In 1999 in case SC077051A, he was convicted of that 273A(a) and was sentenced to the 8 years prison[, the upper term]."

The trial court noted it "finds that somewhat significant because the sentencing Judge and parties in that case felt that the conduct was egregious enough to warrant the upper term, and then to double it." It noted the CDCR "mentioned the conviction, but not that it was a significant conviction as far as the 8 years." The court continued:

"2009, a 11351. He's got … parole violations in 2011, 2012, 2013, 2014, 2014, 2015. A 1364 in 2015. Another parole violation in 2016. Then in July another 2016 parole violation. In 2016, he's got a 600(a) willfully harming a police officer or horse, and then … unlawful possession of teargas. Another 11377(a) drug, and then 2017 parole violation. Under his … parole history, he's got a March 25th 1989 escape from custody. May 19th, 1997, he's back from parole for absconding. June 19th of 2009, he's also absconded from parole. In December of 2010 until 2017, he managed to abscond from parole 14 separate times. As far as his institutional adjustment, it looks like the only thing I'm seeing is a Chrono. It is not significant enough to be a 115, so it must be like a 1128. 2019, he failed to meet work expectations. That means as far as a crime free time period, it looks like we are talking about 5 years. He has in 2022 mild [*sic*] stone completions, 80 hour of intergraded substance abuse disorder treatment. That is outstanding. Looking at his rap sheet, I'm sure helps explain some of his behavior. In 2021, he's participated in Tehachapi Mountain Adult School. There is a work supervisor's report[] from 2020. Satisfactory grades of his performance as a dorm janitor. His self-help activities are listed … and also listed on the defense motion…. [H]e's got in 2020 from Cerro Coso College, that's July. October 13th, he was working on Commensality[phonetic]…. In 2021, he's got principals health of education in modern art. 2021, he got a passing grade in speech. 2022, he got an "A" in Humanity and a "C" in Sociology Family Relations. Outstanding on the "A." I mean outstanding to be in prison and get both actually, but I mean kudo on the "A." 2022, passing grade in Library and

8.

English. He's got a "B" in Sociology in 2022. He's got … 80 hours in substance abuse in 2022 as well. He received a passing grade in political science and art in 2022. In 2022, he's got a passing grade in Anthropology. A passing grade. It is a "D," but still a passing grade…. He got a "D" in American Government, but kudos for finishing it. He got a "C" in Spanish…. That was Spanish 1, but he got an "A" in Spanish 2…." It look likes [*sic*] he's paroling in 1984 from CYA, and it looks like his first adult conviction might be 1985, receiving stolen property. It's a felony. He was placed on probation. It looks likely the following year he gets violated on his probation and gets another 6 months. '87, he's got petty theft. He's got switch blade in '87. Oh, we've got the loitering in '87 and the false information on the police officer. And I apologize that these are repetitive to the CDC document. 1988, grand theft property 2 years prison. Then in 1989, he's got the 16 months prison for the 4530 (c), that was consecutive 16 months. It looks like 1991, he's got a robbery, that's a 212.5 (b) case 4638A, 3 years prison. '93, later he's got a parole violation. '97 under the influence. '97 obtaining telephone services by fraud. Also a parole violation. There is 11377 felony 8 years, but we know it's a misdemeanor, so I'm giving that very little weight. What does concern me again is that 1999 conviction in SC077051A for the willful cruelty for 8 years. Parole violation in 2009. 2010, an 11350 for 2 years prison. Parole violation in 2011. It looks like 2013, he had failed to appear, that's Penal Code Section 853.7. It is an arrest only…. I … see a parole violation in 2013. He got extra 135 days. 2015, possession of paraphernalia, a misdemeanor. 2016, a parole violation. He has in 2007, Case Number BM892623A, it is a misdemeanor 4 days jail for a charge of 1104.2 of UB. I have no idea what that is. I won't give it much weight. I only mention it because it isn't very often we come across charges we don't know. 2017, a 11377 misdemeanor and a 11364 misdemeanor.…"

With regard to the 1999 conviction "for the 273," defense counsel noted "that is 25 years old" and "he doesn't have any other similar charges or convictions." She argued much of defendant's criminal history "is dated," "20, 25 years ago and more." She asserted defendant had rehabilitated himself and the relief requested should be granted. The prosecutor asserted "this case was a result of a plea bargain" and defendant was eligible for a life sentence based on the charges. He argued "any benefit that [defendant] got was received at the time of the sentencing on the original case." Accordingly, he asked the court "to deny the resentencing Petition."

The trial court "denied" the "motion." In reaching its finding, the court explained:

> "I will give the recommendation from CDCR great weight. I would note I'm somewhat concerned that they don't really seem to be giving the 1999 child cruelty much weight…. [T]hey've listed it, but they don't say it was an upper term times two. So it was a fairly serious criminal act on vulnerable [*sic*] member of society. I'm somewhat surprised that they think [defendant] is such a good candidate given his almost consistent parole violations…. [A]t one point he's had so many parole violations that they don't even list them singly anymore or the absconding anymore. They simply say from December 2010 to July 6th that he has absconded from parole 14 times rather than listing them all. I frankly think he's a terrible candidate. This is a very recent case. I'm not going to exercise discretion. I'm leaving the sentence in play as originally sentenced."

The trial court told defendant it knew he had "been working hard, but … it was a negotiated disposition. I think both parties took into factors [*sic*] your criminal history and the facts of the case. And I think it was a reasonable sentence, and I'm not finding a reason to change it. So motion is denied."

## DISCUSSION

Defendant appeals from the trial court's order, arguing the court misapplied section 1172.1, subdivision (b)(2) in denying relief. He asserts the court abused its discretion in denying relief by failing to engage in the dangerousness inquiry required by this section and that it should have resentenced him under current law which required him to be resentenced to the middle term. The People contend the court properly proceeded to resentencing and reimposed the same term.

### I.     Standard of Review

We review a trial court's resentencing determination for an abuse of discretion. (*People v. Frazier* (2020) 55 Cal.App.5th 858, 863.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation]." (*People v. Moine* (2021) 62 Cal.App.5th

10.

440, 449; *People v. Hall* (2016) 247 Cal.App.4th 1255, 1264 [" 'An abuse of discretion is shown when the trial court applies the wrong legal standard.' "]; see also *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 231 [similar].)

## II.  Applicable Law

### A.  Section 1172.1 Resentencing

Section 1172.1 (former § 1170.03)[4] provides a procedure by which a court may "at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of a defendant incarcerated in state prison … recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence."  (§ 1172.1, subd. (a)(1).)

This section also provides, where a resentencing request is made, there is now a presumption in favor of recall and resentencing of the defendant, " 'which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety,' " as defined in subdivision (c) of section 1170.18.  (*People v. McMurray*, *supra*, 76 Cal.App.5th at p. 1040; accord, § 1172.1, subd. (b)(2).)  Section 1170.18, subdivision (c) defines "unreasonable risk of danger to public safety" as "an unreasonable

---

**4**      Assembly Bill No. 1540 (2021–2022 Reg. Sess.) (Assembly Bill 1540) moved the recall and resentencing provisions of former section 1170, subdivision (d)(1) to section 1170.03 effective January 1, 2022.  (Stats. 2021, ch. 719, §§ 1–7.)  It also clarified many of the required procedures under this section.  (See *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1041 ["[T]he Legislature repeatedly indicated that Assembly Bill 1540 was intended to 'make clarifying changes' to former section 1170[, subdivision] (d)(1), including specifying the required procedure and guidelines when the CDCR recommends recall and resentencing"].)  Assembly Bill No. 200 (2021–2022 Reg. Sess.) then renumbered section 1170.03 to section 1172.1 effective June 30, 2022, but made no substantive changes.  (Stats. 2022, ch. 58, § 9.)  For the sake of clarity and consistency, we refer to section 1172.1 when addressing the statute governing the petition for resentencing.

11.

risk that the petitioner will commit a new violent felony" within the meaning of section 667, subdivision (e)(2)(C)(iv). Those offenses—known as super strikes—include, among others, any homicide and any serious or violent felony offense punishable in California by life imprisonment or death. (§ 667, subd. (e)(2)(C)(iv); *People v. Braggs* (2022) 85 Cal.App.5th 809, 818 (*Braggs*); see *People v. Valencia* (2017) 3 Cal.5th 347, 351.) Additionally, "[w]here, as here, the CDCR recommends recall and resentencing, the court is also now required to hold a hearing (unless the parties otherwise stipulate), state on the record its reasons for its decision, provide notice to the defendant, and appoint counsel for the defendant." (*McMurray*, at p. 1040; accord, § 1172.1, subds. (a)(6)–(8), (b)(1).) Furthermore, when recalling and resentencing pursuant to its provisions, the court "shall … apply any changes in law that reduce sentences or provide for judicial discretion …." (§ 1172.1, subd. (a)(2); *McMurray*, at p. 1040; *People v. Pierce* (2023) 88 Cal.App.5th 1074, 1078.)

**B.     *People v. Braggs***

In *Braggs*, *supra*, 85 Cal.App.5th 809, the CDCR recommended the defendant's sentence be recalled in light of the court's newfound discretion to strike an enhancement pursuant to section 667, subdivision (a)(1) (authority which did not exist at the time of the defendant's sentencing). (*Braggs*, at p. 813.) After initially declining to resentence the defendant, the court decided to recall the defendant's sentence and resentence him.[5] (*Id*. at pp. 814–815.) The court then struck the two one-year prior prison enhancements because they were no longer legally valid, but reimposed the middle term, doubled (six years) and the five-year prior serious felony enhancement. (*Id*. at pp. 815–816.) On

---

[5]     The trial court initially denied the request to recall defendant's sentence, determining the statutory amendments giving it discretion to strike the prior serious felony enhancement did not apply to cases that were final. (*Braggs*, *supra*, 85 Cal.App.5th at p. 814.) The defendant filed a motion for reconsideration and, after hearing argument from the parties, the court stated it was recalling defendant's sentence and resentencing him. (*Ibid*.)

appeal, the defendant argued the court failed to apply the new statutory " '*presumption favoring recall and resentencing*' " that went into effect days before the resentencing hearing. (*Id*. at pp. 816, 818–819.) Alternatively, he argued "the court's denial was … an abuse of discretion because nothing in the record supports a finding that he is an unreasonable risk of danger to public safety." (*Id*. at p. 819.)

The *Braggs* court concluded the defendant was not prejudiced by any alleged failure of the court to apply the presumption or the purported lack of evidence to support a finding overcoming the presumption, reasoning "[t]he court in this case in fact *recalled* [the] defendant's sentence and *resentenced* him." (*Braggs*, *supra*, 85 Cal.App.5th at p. 819.) The *Braggs* court observed, "Although on resentencing, the court did not strike the prior serious felony enhancement as discussed in the Secretary's letter, nothing in former section 1170.03 or current section 1172.1 provides for a presumption in favor of the Secretary's *particular* recommended sentence. Rather, the statute provides for a presumption regarding recalling and resentencing a defendant, but not a presumption as to a particular sentence recommended by the Secretary." (*Ibid*.)

## III. Analysis

Defendant argues the trial court abused its discretion in denying recall and resentencing under section 1172.1 because it failed to "make an inquiry into whether [he] currently poses an unreasonable risk to public safety within the meaning of subdivision (b)(2)." Relatedly, he asserts "the record discloses no substantial evidence to theoretically support any finding of dangerousness within the meaning of the definition …." He argues the court was obligated to recall his sentence and to resentence him under current law. He argues the court should have considered the changes to section 1385 in evaluating whether to dismiss the section 667, subdivision (a) enhancement and to impose the middle term as no factors in aggravation were proven or admitted in support of the upper term. The People respond the trial court "did not err

13.

when it failed to assess [defendant]'s risk of danger because it *did* recall [defendant]'s sentence," as in *Braggs*, *supra*, 8 Cal.App.5th at pp. 819–820. That is, the People contend "the court here complied with section 1172.1 because it recalled [defendant]'s sentence, permitted briefing by the parties, and conducted a resentencing hearing." And they contend the court did not abuse its discretion by reimposing the same sentence after considering relevant factors, asserting the amendments to section 1170, subdivision (b) do not apply because defendant agreed to the upper term and the sentencing court lacked discretion to impose a different term.

Initially, we disagree with the People's argument that the court, here, recalled and resentenced defendant. To the contrary, the record reflects the court stated it was "not going to exercise [its] discretion," it was "leaving the sentence in play as originally sentenced," and it "denied" the "motion." The court at no time stated it was recalling defendant's sentence and resentencing him. (*Cf. Braggs*, *supra*, 85 Cal.App.5th at p. 818 ["at the resentencing hearing … the trial court expressly stated that it was recalling defendant's sentence and resentencing him"].) And the record before us does not reflect a new abstract of judgment was issued following the hearing on the Secretary of the CDCR's recommendation.

Because the court here does not appear to have recalled and resentenced defendant, this case is distinct from *Braggs*, on which the People rely. (See *Braggs*, *supra*, 85 Cal.App.5th at p. 819 [concluding "any purported failure of the court to apply the presumption or the purported lack of evidence to support a finding overcoming the presumption" was not prejudicial because the court "in fact *recalled* defendant's sentence and *resentenced* him"].) Pursuant to section 1172.1, subdivision (b)(2), the "presumption favoring recall and resentencing of the defendant … may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of section 1170.18." And a trial court abuses its discretion if its decision is based on an incorrect legal standard. (See *People v. Knoller* (2007) 41 Cal.4th

14.

139, 156–158 [court abused its discretion in granting motion for new trial based on erroneous legal standards]; see generally *In re Charlisse C.* (2008) 45 Cal.4th 145, 159–160, 167 [juvenile court abused discretion in applying incorrect standard in disqualifying minor's counsel].)

It is true that, "[a]bsent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.) But, here, the record before us reveals evidence to the contrary. That is, if the trial court knew and applied the governing law, it should have stated on the record its reasons for denying recall and resentencing which required a finding that defendant "currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1, subd. (b)(2).) It failed to make such a finding. Indeed, while the court stated it afforded the Secretary's recommendation "great weight" and it detailed defendant's criminal and parole history and his rehabilitative efforts, conduct in prison, and the documents he submitted, it never addressed the presumption in favor of recall and resentencing and that it can "only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of section 1170.18." (See § 1172.1, subd. (b)(2).) Most importantly, the court failed to state whether (or why) it found defendant to be an unreasonable risk of danger to public safety pursuant to section 1170.18, subdivision (c). (See § 1172.1, subd. (a)(7) ["The court shall state on the record the reasons for its decision to grant or deny recall and resentencing."].) These issues were also not addressed by the parties in their briefing or oral arguments during the November 2024 hearing.

On this record, we are left with the conclusion that the trial court failed to understand the proper scope of its discretion in light of the mandated presumption in favor of recall and resentencing. Thus, it abused its discretion in rendering its order denying relief. We deem it appropriate, here, to remand the matter to the trial court for

15.

reconsideration of the CDCR's recommendation pursuant to section 1172.1. We express no opinion on whether defendant is ultimately eligible for recall and resentencing and, if his sentence is recalled and he is resentenced, how the court should proceed in this regard. Rather, these matters are more appropriately considered by the trial court in the first instance. (See generally *People v. Slayton* (2001) 26 Cal.4th 1076, 1084 ["As a general rule, we do not issue advisory opinions indicating ' "what the law would be upon a hypothetical state of facts." ' "]; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 119 [" 'The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court.' "].)

## DISPOSITION

The order declining to recall and resentence defendant is reversed and the matter is remanded for further proceedings consistent with this opinion and section 1172.1.


PEÑA, J.

WE CONCUR:


DETJEN, Acting P. J.


FRANSON, J.